IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| RYLEE TOWNSEND,              )<br>                              )<br>    Plaintiff,                )<br>                              )<br>vs.                           )<br>                              )<br>ERVIN HEARD, et al.,          )<br>                              )<br>    Defendants.               )<br>                              )<br>                              ) | 7:15-cv-01086-LSC |

### Memorandum of Opinion

Plaintiff Rylee Townsend ("Townsend") filed this action against Ervin Heard ("Heard"), Keith Hannah ("Hannah"), and Bibb County, Alabama ("Bibb County") under 42 U.S.C. § 1983 for constitutional violations, as well as for various state law claims. Before the Court is Bibb County's motion to dismiss (Doc. 11), and Hannah's motion to dismiss or, in the alternative, motion for a more definite statement.[1] (Doc. 12.) For the reasons stated below, both motions to dismiss are due to be granted.

---

[1] Townsend has indicated that she does not object to dismissal of Bibb County, nor does she object to the dismissal of the state law claims asserted against Hannah. Thus, those claims are due to be dismissed.

I.  **BACKGROUND**[2]

In the late night hours of June 27, 2013, Townsend was driving her car when Heard pulled her over, claiming that she had been speeding. Townsend complied with Heard's instructions to get out of the car, and Heard searched the car and told her that he found marijuana.[3] Heard then placed Townsend in the back of his patrol vehicle and made Townsend expose her breasts and genitals. He then instructed her to get out of the patrol vehicle and hug him, at which point he held her against his own body. After releasing her from the hug, Heard demanded her telephone number, telling her that he "had a year and a day to file a report" for the marijuana. (Doc. 1 at Page 7.) After receiving Townsend's phone number, Heard repeatedly called and texted Townsend in an attempt to coerce her to meet him privately. Townsend reported Heard's actions to her mother, who reported it to the Bibb County District Attorney. Heard was later indicted for his actions toward Townsend as well as to five other females.

Hannah, the Sheriff of Bibb County, was Heard's supervisor and employer during the time-period relevant to Townsend's allegations. Townsend filed this action against Heard, Hannah in his individual capacity, and Bibb County on June

---

[2] For purposes of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court treats facts alleged in the complaint as true and construes them in the Plaintiff's favor. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012).

[3] There was, in reality, no marijuana in the car.

26, 2015. Hannah was served with the summons and complaint 132 days later. Townsend's complaint has separate sections, including one titled "Factual Allegations" followed by a section titled "Causes of Action." There are only two allegations within the Factual Allegations section made against parties other than Heard:

> "41. The other defendants and/or their agents were aware of other complaints about Heard's misconduct and sexual abuse of women in his custody prior to his actions against Miss Townsend.
>
> 43. The other defendants knew or should have known of Heard's pattern and practice of sexual misconduct, discrimination and harassment."

(Doc. 1 at Page 8.) There is a further allegation in paragraph 42 that states that "Heard's misconduct and indictment relate to at least six different females." (Doc. 1 at Page 8.) Within the Causes of Action section, further statements are made regarding Hannah and Bibb County:

> "56. Hannah and or Bibb County knew or should have known about the wide-spread pattern and practice of sexual harassment and abuse suffered by Plaintiff and other females.
>
> 57. Hannah's and Bibb County's inaction as to the harassment by Heard amounted to deliberate indifference to Plaintiff's constitutional rights.
>
> 58. Hannah's and Bibb County's inaction as to the harassment by Heard caused constitutional injuries to Plaintiff by infringing on her substantive due process rights.

> 59. Hannah's and Bibb County's failure to take action to stop Heard's misconduct constituted deliberate indifference to the known and obvious consequences of allowing the misconduct to continue . . . .
>
> 60. . . . . it was the policy and custom of the [sic] Hannah and Bibb County to make no effort to stop the conduct.
>
> 61. The defendants' improper custom or policy that encouraged the sexual misconduct and coercion amounted to deliberate indifference to Plaintiff's federal rights.
>
> 62. In failing to take action to prevent or remedy the sexual misconduct and coercion, Hannah and [sic] sanctioned the conduct.
>
> 63. Hannah and Bibb County were deliberately indifferent with respect to the hiring of Heard which proximately caused the violations of constitutional rights as alleged herein.
>
> 64. Hannah and Bibb County were deliberately indifferent with respect to the retention of Heard which proximately caused the violations of constitutional rights as alleged herein.
>
> 65. Hannah and Bibb County's failure to train Heard and other officers proximately caused the violations of constitutional rights as alleged herein.
>
> 66. These Defendants' failure to discipline Heard proximately caused the violations of constitutional rights as alleged herein."

(Doc. 1 at Page 10–12.) As well as seeking damages, Townsend's complaint requests that the Court "[i]ssue a preliminary injunction against the Defendants . . . from engaging in any further unlawful practices, policies, customs, usages, sexual harassment or sex discrimination set forth herein." (Doc. 1 at Page 19.) Townsend's basis for this request for an injunction is that she "has an apprehension of future harm and . . . avers she will suffer future harm if the

policies, customs, and practices complained of are not changed." (Doc. 1 at Page 18.) Hannah and Bibb County filed the instant motions to dismiss Townsend's claims against them as well as her claim for injunctive relief.

## II. STANDARD OF REVIEW

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the facts alleged in the complaint must be specific enough that the claim raised is "plausible." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is *plausible on its face*.") (internal quotations omitted) (emphasis added). "To be plausible on its face, the claim must contain enough facts that 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Pouyeh v. Univ. of Ala. Dep't of Ophthamology*, No. CV-12-BE-4198-S, 2014 WL 2740314, at *3 (N.D. Ala. June 16, 2014) (quoting *Iqbal*, 556 U.S. at 678) (alteration in original). Conclusory statements of law may "provide the framework of a complaint," but the plaintiff is required to support them with "factual allegations." *Iqbal*, 556 U.S. at 679.

The process for evaluating the sufficiency of a complaint has two steps. This Court "begin[s] by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." *Id.* Conclusory statements and recitations of a claim's elements are thus disregarded for purposes of determining whether a plaintiff is entitled to access discovery. *See Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010) (citing *Iqbal*, 556 U.S. at 687). Next, this Court "assume[s] [the] veracity" of "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A complaint's factual matter need not be detailed, but it "must . . . raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In reviewing the complaint, this Court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Nonetheless, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the facts alleged] is improbable." *Twombly*, 550 U.S. at 556. This Court considers only "the face of the complaint and attachments thereto" in order to determine whether Plaintiff states a claim for relief. *Starship Enters. of Atlanta, Inc. v. Coweta Cnty., Ga.*, 708 F.3d 1243, 1252 n.13 (11th Cir. 2013). Generally, the complaint should include "enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory.'" *Am. Fed'n of Labor & Cong.*

*of Indus. Orgs v. City of Miami, Fla.*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683-84 (11th Cir. 2001)).

## III. Discussion

Hannah first contends that dismissal of Townsend's § 1983 claim is warranted under Fed. R. Civ. P. 12(b)(5) because service of process was perfected more than 120 days after Townsend filed her complaint. *See* Fed. R. Civ. P. 4(m)(pre-December 2015 amendments) ("If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.").

However, even [a]bsent a showing of good cause, the district court has the discretion to extend the time for service of process." *Lepone-Dempsey v. Carroll County Com'rs*, 476 F.3d 1277, 1282 (11th Cir. 2007). One factor the Court must consider, absent a showing of good cause, is whether the statute of limitations would bar the plaintiff from refiling her complaint. *Id.* at 1282 ("Although the running of the statute of limitations, which barred the plaintiffs from refiling their claims, does not require that the district court extend time for service of process

under Rule 4(m), it was incumbent upon the district court to at least consider this factor.").

Here, the statute of limitations on Townsend's § 1983 claim is two years. *See Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003) ("Federal courts apply their forum state's statute of limitations for personal injury actions to actions brought pursuant to 42 U.S.C. § 1983.") (quoting *Uboh v. Reno*, 141 F.3d 1000, 1002 (11th Cir. 1998)); *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) (applying the two-year statute of limitations in Ala. Code § 6-2-38 to a § 1983 action brought in Alabama). Townsend filed her complaint one day before the limitations period ended and would now be time-barred from refiling her claim if the Court were to dismiss it. The Court finds the twelve-day extension of time Townsend needed to perfect service appropriate due to the running of the statute of limitations, and thus dismissal under Fed. R. Civ. P. 12(b)(5) is not warranted.

Hannah further contends that dismissal of Townsend's § 1983 claim is appropriate because Townsend's complaint fails to state a claim upon which relief can be granted. Townsend's complaint does not allege that Hannah personally participated in the actions taken against her. Instead, her claims allege supervisory liability against Hannah. An official may be liable in a supervisory capacity under § 1983 when there is a causal connection between his subordinates' unconstitutional

conduct and the official's own actions. *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1236 (11th Cir. 2010). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Doe v. School Bd. of Broward County, Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010) (quoting *Braddy v. Fla. Dep't of Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)). Other than personal participation on behalf of the defendant, the plaintiff may establish the necessary causal connection by showing (1) that there was "a history of widespread abuse," thereby putting the supervisor on notice of the constitutional violation; (2) that the supervisor imposed "a custom or policy . . . resulting in deliberate indifference to constitutional rights"; or (3) that the supervisor "directed the subordinates to act unlawfully or knew [they] would act unlawfully and failed to stop them from doing so." *See id.* (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360–61 (11th Cir. 2003)).

To show a causal connection through a history of widespread abuse, "[a] few isolated instances of harassment will not suffice." *Doe*, 604 F.3d at 1266 (alteration in original) (quoting *Braddy*, 133 F.3d at 802). The harassment "must not only be widespread, [it] also 'must be obvious, flagrant, rampant and of continued duration . . . .'" *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). However,

"[w]hen rights are systematically violated on a near-daily basis, such abuses are sufficiently egregious to warrant supervisory liability, even if it is a single 'bad apple' engaging in the repeated pattern of unconstitutional behavior." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1294 (11th Cir. 2004).

Following the two-pronged approach to a Rule 12(b)(6) motion, the Court must give no weight to the complaint's conclusory legal allegations and determine whether the remaining factual allegations toward Hannah, accepted as true, state a claim for supervisory liability through widespread abuse. Although the complaint states that Hannah "and/or [his] agents were aware of other complaints about Heard's misconduct and sexual abuse of women in his custody prior to his actions against Miss Townsend," the complaint fails to allege facts regarding the number of complaints made,[4] the nature of the misconduct and sexual abuse those complaints regarded, or the time-period when those complaints were made. While Townsend's complaint is not subject to a heightened pleading standard, the allegations against Hannah are nothing more than "naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Without facts indicating

---

[4] Although Townsend's complaint alleges that "Heard's misconduct and indictment relate to at least six different females," this allegation does not indicate whether those six females lodged the complaints that Hannah "and/or [his] agents were aware of" prior to his actions against Townsend.

how these "other complaints" might plausibly establish a history of widespread abuse such that Hannah was on notice of Heard's violations, Townsend's complaint fails to allege a history of widespread abuse.

Although the complaint fails to sufficiently allege a history of widespread abuse, Townsend contends that she has adequately alleged a causal connection through Hannah's deliberate indifference. Deliberate indifference exists if an official (1) [has] subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Franklin*, 738 F.3d at 1250. The complaint alleges that Hannah "knew or should have known" about Heard's misconduct against females and that Hannah's "inaction," "failure to train Heard," and "failure to discipline Heard" constituted deliberate indifference "to the known and obvious consequences" of allowing Heard's misconduct to continue. (Doc. 1 at Page 8–12.) These conclusory legal conclusions are not entitled to an assumption of truth. *See, e.g.*, *Franklin v. Curry*, 738 F.3d at 1250–51 ("[The complaint]'s repeated allegations the [s]upervisory [d]efendants were deliberately indifferent or their actions constituted or resulted in deliberate indifference carry no weight. Similarly, by alleging [that they] 'knew or should have known' of a risk, [the plaintiff] has merely recited an element of a claim without providing the facts from which one could draw such a conclusion.").

However, Townsend has failed to allege facts supporting these conclusions that Hannah was deliberately indifferent. The only facts Townsend alleges regard Heard's inappropriate conduct with Townsend, the indictment against Heard, and that Heard's misconduct and indictment relate to at least six females. The allegation that "[t]he other defendants and/or their agents were aware of other complaints about Heard's misconduct and sexual abuse of women in his custody prior to his actions against Miss Townsend," to the extent it is not conclusory and must be accepted as true, is not enough to show Hannah's subjective knowledge of the risk Heard posed. *See, e.g.*, *Franklin*, 738 F.3d at 1250 (holding that allegations that supervisory defendants were "on notice" of and "knew or should have known" about unconstitutional conduct but failed to correct it and were deliberately indifferent failed to allege constitutional violations against supervisory defendants because the plaintiff "failed to allege the [s]upervisory [d]efendants *actually knew* of the serious risk . . . posed even in the most conclusory fashion").

Further, although a supervisor can be liable when he is deliberately indifferent in failing to train and supervise subordinates, "[w]here the proper response [by an officer] . . . is so obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by [supervisors] to the

need to train or supervise." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 490 (holding that there was no municipal liability for deliberate indifference in failing to train police officers not to "barter arrests for sexual favors").[5]

Finally, Townsend alleges that "[t]he defendants' improper custom or policy that encouraged the sexual misconduct and coercion amounted to deliberate indifference to Plaintiff's federal rights." (Doc. 1 at Page 11.) However, again, Townsend fails to offer any facts regarding this custom or policy to support her legal conclusion. *See, e.g.*, *Franklin*, 738 F.3d at 1251 (holding that the plaintiff had failed to allege supervisory liability through deliberate indifference when the she alleged that the defendant "'failed to promulgate, to adopt, to implement or to enforce policies, rules, or regulations . . .' but she d[id] not describe any of the policies that were in place, the sort of policies that should have been in place, or how those policies could have prevented [the subordinate]'s harassment"). Thus, Townsend's supervisory liability claim of deliberate indifference regarding an improper custom or policy also fails.

---

[5] Although *Sewell* addressed deliberate indifference for municipal liability, its analysis is applicable to cases involving deliberate indifference for supervisory liability. *See, e.g.*, *Greason v. Kemp*, 891 F.2d 829, 837 (11th Cir. 1990) ("Although we are not here concerned with municipal liability, the analysis used in those cases is applicable to the case at hand, in which we must determine whether quasi-policymakers have been deliberately indifferent in their supervision of subordinates.").

Hannah alternatively contends that dismissal is warranted on the basis of qualified immunity. An official acting within the scope of his employment is "shielded from suit against him in his individual capacity if, while performing his discretionary function, his conduct did not violate a clearly established right of which a reasonable person would have known." *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1198 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When deciding whether a right is "clearly established," courts must define the right at issue with specificity, taking into account the unique facts of the case. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (stating that "we have instructed that courts should define the 'clearly established' right at issue on the basis of the 'specific context of the case'" (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001))). The parties here do dispute that Hannah is a government official who was acting within the scope of his discretionary authority.

When evaluating qualified immunity at the motion to dismiss stage, the Court must determine whether Townsend's complaint alleged a violation of a constitutional right and, if so, whether that right was clearly established at the time of the alleged violation. *See, e.g.*, *Franklin*, 738 F.3d at 1249 ("[T]o evaluate [the defendants'] entitlement to qualified immunity, we ask whether [the plaintiff] has alleged a violation of a constitutional right and, if so, whether the constitutional

right violated was clearly established at the time of the violation."). As stated above, Townsend's complaint does not sufficiently allege that Hannah violated her constitutional right. Thus, Hannah is entitled to qualified immunity.

### C.     Request for Injunctive Relief

Federal courts have authority to decide only "cases" and "controversies." U.S. Const. art. III, § 2. "One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so . . . require[ing] the litigant to prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013). The plaintiff must show that she has standing as to each type of relief she seeks. *See, e.g.*, *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009). "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Id.*; *see also Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) ("Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately

proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury.").

Townsend seeks a preliminary and permanent injunction against the defendants "from engaging in any further unlawful practices, policies, customs, usages, sexual harassment or sex discrimination," stating that she "has an apprehension of future harm and . . . avers she will suffer future harm if the policies, customs, and practices complained of are not changed." (Doc. 1 at Page 18–19.) She lacks standing to seek this injunctive relief. Townsend has failed to demonstrate or specifically allege any policy or practice implemented by Hannah or Bibb County that caused her past injury, much less one that threatens future injury. And, even if Townsend had sufficiently alleged an actual threat of some sort of future injury, she has not alleged information showing that this future injury is fairly traceable to any policy or practice implemented by Hannah or Bibb County.

Further, as Townsend stated in her response to Hannah's motion to dismiss, Heard was recently convicted for crimes including sexual abuse and human trafficking. (Doc. 27 at Page 2.) Because Heard is no longer employed as a Sheriff's Deputy and because Townsend has failed to otherwise demonstrate an unconstitutional policy or practice, any injunction entered by the Court would not redress the threat of future harm Townsend fears. *See, e.g.*, *City of Los Angeles v.*

*Lyons*, 461 U.S. 95, 106 (1983) (holding that the plaintiff lacked standing to seek a preliminary and permanent injunction barring the use of choke holds, even though the plaintiff may have been illegally choked by the police in the past, because to state a claim for injunctive relief the plaintiff "would have had not only to allege that he would have another encounter with the police but also make the incredible assertion either, (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter . . . or (2) that the City ordered or authorized police officers to act in such manner").

## IV. CONCLUSION

For the reasons stated above, Bibb County's motion to dismiss (Doc. 11) is due to be GRANTED, and Hannah's motion to dismiss (Doc. 12) is due to be GRANTED. A separate order consistent with this opinion will be entered.

**DONE** AND **ORDERED** ON FEBRUARY 12, 2016.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
182184